UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 9-157-B-W |
| | ) |
| BRIAN WILLIAM MURPHY, | ) |
| | ) |
| Defendant. | ) |

### RECOMMENDED DECISION

Brian Murphy, who is charged with possession of a firearm by a prohibited person, has filed a motion to suppress certain statements and admissions he made during a police interview with two officers on June 2, 2009. The entire interview, lasting for one hour and forty-three minutes, was recorded by audio and video means. After making inquiry, I learned that Murphy's attorney and the attorney for the United States agree that no evidentiary hearing is required and that the Court can decide the issues raised by the motion to suppress by viewing the video and making its own assessment as to the coercive or non-coercive nature of the interview. I have not included proposed factual findings, because the facts here are undisputed and they are as depicted in the video.[1] Neither side has any further evidentiary submission it wishes to make. After watching the videotape, I am satisfied that there is no legal basis to suppress these statements by Brian Murphy. Accordingly, I recommend the Court deny the motion to suppress.

### DISCUSSION

As originally filed, Murphy's motion claimed both that the statements were obtained from him in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and that the statements were

---

[1] The audio on the recording provided to the Court (two identical copies) is very difficult to understand. I have done my best to glean what was being said, but without a written transcript of the entire interview, some of it is guesswork on my part. However, the video does reveal inflections, emotions, and tone of voice, the issues raised by Defendant in his motion. When viewed in conjunction with the log entries provided by Defendant (Doc. No. 37-1), it is possible to ascertain what is transpiring on the video.

not voluntary statements in any event. Having reviewed the video of the interview, Murphy now concedes that no Miranda violation exists, but continues to maintain that the tactics of Detective Beaulieu, one of the officers involved in the interrogation, were coercive in violation of Colorado v. Connelly, 479 U.S. 157 (1986). (Def.'s Reply at 1-2, Doc. No. 37.) The burden is on the Government to prove that the defendant's statements were voluntary by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972). The Government must show that, based on the totality of the circumstances, the investigating agents neither "broke" nor overbore the defendant's will, Chambers v. Florida, 309 U.S. 227, 240 (1940), and that his statements were "the product of a rational intellect and a free will," Blackburn v. Alabama, 361 U.S. 199, 208 (1960). See also Lynumn v. Illinois, 372 U.S. 528, 534 (1963). As this language suggests, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'." Connelly, 479 U.S. at 167. See also United States v. Boskic, 545 F.3d 69, 78 (1st Cir. 2008) ("[A]fter Connelly, 'only confessions procured by *coercive official tactics* should be excluded as involuntary.'") (quoting United States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998)). Coercive police activity may include either the creation of a susceptible psychological state in the person interrogated, Townsend v. Sain, 372 U.S. 293, 307-308 (1963) (concerning alleged administration of "truth serum" to quell heroin addict's withdrawal symptoms), or the exploitation of an existing psychological condition, Blackburn, 361 U.S. at 207-208 ("[A] most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane.")

The First Circuit has noted that because a suspect is in a weakened condition because of his heroin withdrawal symptoms, it does not necessarily follow that his post-arrest statements are involuntary. United States v. Palmer, 203 F.3d 55, 61-62 (1st Cir. 2000) ("In the context of the

voluntariness of a confession, a defendant's mental state by itself and apart from its relation to official coercion never disposes of the inquiry into constitutional voluntariness."). In the context of the present case, Murphy's depression and suicidal ideation may or may not have been a motivating factor in his choice to cooperate with officials, but nothing I saw on the video overwhelmed him or prevented him from making an independent and rational choice.

Whether or not Miranda's prophylactic procedures were followed, the Court's due process inquiry requires a determination that the statements were voluntary. A confession is inadmissible as a matter of due process if, under the totality of circumstances, it was involuntarily obtained (for example, if the police beat a confession out of an individual after he validly waived his Miranda rights). See, e.g. Miller v. Fenton, 474 U.S. 104, 110 (1985) (stating that the "ultimate issue of 'voluntariness' is a legal question requiring independent federal determination"); United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir. 1988) (recognizing that prolonged interrogation might render eventual confession involuntary despite valid waiver). Nothing of this sort occurred during the video interview of Murphy, and Murphy is not suggesting that something else went on behind the scene.

At worst, Murphy's counsel points to the statements of Detective Beaulieu during the period from 2:02 p.m. until 2:07 p.m., when he stepped into the room and questioned Murphy concerning his earlier statements and certain inconsistencies and contradictions. Unfortunately, Detective Beaulieu is not visible during this exchange so it is impossible to compare his demeanor then with his earlier questioning of the defendant when he was visible. (See video at 1:18 p.m. until 1:40 p.m.) According to Murphy's counsel, Beaulieu's transgression during this segment of the interview can be summarized as follows:

> The video demonstrates that Detective Beaulieu changed both his style of
> questioning from open-ended questions to statements of fact and that he did so

3

> knowing that Mr. Murphy was crying, emotional, had previously tried to commit suicide, and requested Officer Smith to shoot him. His tone of voice also indicates that he was demanding compliance from Mr. Murphy. Given the number of times Mr. Murphy had already stated what had happened, without being able to leave the interview room, the tactics used by Detective Beaulieu were overtly coercive.

(Def.'s Reply at 1-2.) I simply do not agree with this characterization. While Detective Beaulieu's tone of voice is slightly more assertive and his questioning style more confrontational, it hardly rises to the level of overly coercive. "Overly coercive" represents defense counsel's characterization of the interaction on the video. I watched the same video and I would not use those same words to characterize the interrogation. I have nothing more to say about that subject, except to recommend that one view the video to draw one's own conclusions about Detective Beaulieu's style during the questioning of Murphy.

As to Officer Smith, Murphy does not really challenge the statements made to him when Detective Beaulieu was not in the room. One certainly could not describe Officer Smith's manner as overly coercive. To the contrary, he appeared solicitous and helpful when Murphy became emotional and started to cry, getting him water and a tissue and at one point taking him to the bathroom. It makes for poor television, if one expects to see the interrogator treating the prisoner brutally. Nevertheless, it is a good example of proper police conduct during an interview of an obviously somewhat distraught individual with apparent mental problems based upon his history of involuntary commitment to a mental institution. I see no basis for suppression of any of these statements.

## CONCLUSION

Based upon the foregoing, I recommend that the motion to suppress be denied.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

February 17, 2010